UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN MEDLEY, No. 01-B-1952

                    Petitioner,

                                              04-CV-6046 (CJS)
                                              **ORDER**

          V.


JEFFREY SKINNER, Superintendent
of Orleans Correctional Facility,

                    Respondent.
_____

## INTRODUCTION

Petitioner Kevin Medley ("Medley") filed a pro se petition (Docket No. 20) seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Medley's petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial in the Monroe County Court, Kevin Medley was found guilty of two counts of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(1)).

This conviction arises from an incident that occurred on August 22, 2000 in the City of Rochester, New York. According to trial testimony, at approximately 12:45 a.m. that morning, Rochester Police Officer Trevor Powell responded to Frontier Field at Morrie Silver Way pursuant to a 911 dispatch call reporting a fight between a male and a female with gun shots fired. T. 204-05,

216.[1]  Upon his arrival, Officer Powell saw Medley struggling with a female later identified as Kimberly Liptrot, Medley's girlfriend. T. 205-08.  Regina Thomas, Liptrot's friend, was also at the scene. T. 205.   According to Officer Powell's police report, he was informed by Thomas to "be careful" when approaching Medley and that Medley had a gun.  Docket No. 20, Exhibit C.  Thomas corroborated this version of the facts in a deposition she gave in connection with the criminal proceedings in which she stated that she told "the officers that [Medley] had a gun and he was beating up my friend."  Docket No. 20, Exhibit F at 2.  At trial, however, Officer Powell testified that Liptrot was the one who told him to "be careful."  T. 207.  Thomas did not testify at trial. Investigator Joseph Spagnolo of the Monroe County District Attorney's office testified that Thomas now lived in Atlanta, Georgia, and could not be located prior to trial despite the issuance of a material witness order from the court.  T. 266-67.

Officer Powell, the first officer at the scene, handcuffed Medley and patted him down for weapons "because of the nature of the call and officer safety reasons."  T. 217.  After determining that Medley did not have a gun on his person, Officer Powell and other officers who had just arrived searched the surrounding area and found a black Jennings .22 caliber automatic handgun in the northeast corner gate of Frontier Field, no more than two to three

---

[1] Citations to "T.__" refer to the trial transcript.

feet away from where Medley and Liptrot were standing. T. 205-09, 218. According to Investigator David Mace's testimony, after Medley was transported to the Public Safety Building he admitted to Mace that the gun was his. T. 244-47. Medley declined, however, to sign a written statement. T. 298-99.

At trial, Medley acknowledged that he waived his Miranda rights and agreed to talk to Investigator Mace, but denied that he admitted the gun was his or that he was involved in a physical struggle with Liptrot when officers arrived on the scene. T. 291-99, 307. Medley did admit he was "arguing" with Liptrot. T. 292. Liptrot, who lived with Medley and was pregnant with his child at the time of trial, testified that she and Medley were in an argument and she told Medley to stop the car and got out while Thomas stayed in the car. T. 274-76. She testified their argument was getting "heated" and going in "a violent direction," but that Medley only had his arm around her shoulder when the officers showed up and he was not being forceful. T. 283-86. Liptrot denied ever seeing a gun. T. 284.

After two days of deliberation, the jury returned a verdict of guilty on two counts of Criminal Possession of a Weapon in the Third Degree. T. 432. On August 22, 2001, Medley received a sentence of seven years in state prison on each conviction, to be served concurrently. Sentencing Hearing of August 22, 2001, at 9.

Medley directly appealed the trial court's judgment to the Appellate Division of the Fourth Department ("Appellate Division"), which unanimously affirmed the judgment and conviction of the trial court. See People v. Medley, 300 A.D.2d. 1096 (4th Dept. 2000). Medley's application to the Court of Appeals for leave to appeal was denied on March 4, 2003. See People v. Medley, 99 N.Y.2d 630 (2003).

Thereafter Medley filed a petition for a federal writ of habeas corpus in February of 2004. The respondent, in his answer filed August 3, 2004, stated that Medley's claims were substantially unexhausted. (Docket No. 10). On August 10, 2005, while his petition for habeas relief was awaiting a decision, Medley filed a state court motion pursuant to section 440.10 of the New York Criminal Procedure Law ("CPL") to vacate the judgment, which was denied on January 30, 2006 primarily on state procedural grounds. See Amended Appendix, State Court Records, Appendix "S" at 304. Medley then filed a pro se motion to amend his habeas corpus petition by adding issues which he had raised in his state collateral motion. (Docket No. 13). On July 12, 2006, this Court issued a Scheduling Order directing Medley to serve the respondent with a proposed amended habeas corpus petition to be accepted in place of the petition filed in February 2004. (Docket No. 12). Medley filed his proposed amended habeas corpus petition on or

about July 28, 2006, and respondent answered on October 11, 2006. (Docket No. 15; 17).

On April 8, 2008, Medley re-filed his 2006 petition after adding additional complaints and factual arguments. (Docket No. 20). This instant federal habeas corpus petition alleges that: (1) Medley's constitutional right to confrontation and cross-examination were violated; (2) the trial court's jury charge was erroneous; (3) the People failed to prove guilt beyond a reasonable doubt; (4) the prosecutor engaged in misconduct; and (5) Medley received ineffective assistance of trial counsel. (Docket No. 20). Respondent answered the amended petition, asserting that none of Medley's claims have merit. Resp't Answer at 7 (Docket No. 21).

For the reasons set forth below, the petition is denied.

## DISCUSSION

### I. In Custody Requirement

Section 2241(c)(1) of Title 28 of the United States Code provides that district courts may consider habeas petitions only from prisoners "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1). The statutory language is interpreted as requiring that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)).

There is no question that Medley filed his petition for habeas relief while in custody.  He was incarcerated on August 22, 2001 in the Orleans Correctional Facility pursuant to a concurrent determinate sentence of seven years.  Medley's first petition was filed in February 2004, and an amended petition was filed on or about July 28, 2006.  Medley was released from state custody on June 29, 2007.  The present amended petition filed on April 8, 2008 is a re-filing of the 2006 petition, and does not allege any additional or different grounds for relief.  Medley satisfies the custody requirement because he was in prison "at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires."  <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998); <u>see</u> <u>also</u> <u>Acaiturri v. Ashcroft</u>, 2004 WL 951531, *3 (E.D.N.Y. April 29, 2004) (finding petitioner who amended petition for writ of habeas corpus after release from incarceration satisfied "in custody" requirement because he was "undoubtedly in custody when he initially filed his Petition.").

A petition may be moot, however, when a habeas petitioner has been released from custody after filing a petition.  The relevant inquiry becomes whether the claim still presents a case or controversy under Article III, § 2 of the U.S. Constitution.  <u>See</u> <u>Spencer</u>, 523 U.S. at 7.  A habeas petition challenging a criminal conviction "is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction

may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." Perez v. Greiner, 296 F.3d 123, 125 (2d Cir. 2002) (citing Pollard v. United States, 352 U.S. 354, 358 (1957)); see, e.g., Sibron v. New York, 392 U.S. 40, 54-56 (1968) (citing deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences as examples of collateral consequences and asserting a presumption that these consequences attach to criminal convictions post-release)). Thus, when a term of imprisonment has expired, "some concrete and continuing injury other than the now-ended incarceration or parole - some collateral consequence of the conviction - must exist if the suit is to be maintained." Spencer, 523 U.S. at 7 (internal citations omitted).

The Supreme Court has "been willing to presume that a wrongful criminal conviction has continuing collateral consequences" so that a habeas petition does not become moot after a petitioner's release. Id. at 8. This presumption applies to Medley, who is challenging the validity of his criminal conviction in federal court. Accordingly, this Court finds that Medley's petition for habeas relief presents a justiciable "case or controversy" for the purpose of conferring subject matter jurisdiction under the Constitution and is not mooted by his release from incarceration.

## II. Exhaustion Requirement

A federal court may not consider a claim raised in a petition for a writ of habeas corpus unless the petitioner has "fairly presented" his claims to the state courts prior to seeking the writ. See Jimenez v. Walker, 458 F.3d 130, 148-49 (2d Cir. 2006); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991) (noting the exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1), is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."). While a federal district court may not grant a petition based on a claim that has not been exhausted, the court may deny a petition containing unexhausted claims. See 28 U.S.C. § 2254(b)(2).

"In developing and refining the 'fairly present[ed]' standard, the Supreme Court concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005). Medley has raised on direct appeal to the Appellate Division and in his collateral motions the same or substantially similar claims as raised in this petition. His motions for leave to appeal to the New York Court of Appeals were denied, exhausting his state remedies. Respondent notes, however, that Medley did not specifically raise his claims alleged before the Appellate Division in his appeal to the New York State Court of Appeals. Resp't

Answer at 6 (Docket No. 21).  The record shows that Medley included the briefs that were presented before the Appellate Division in his application for leave to the New York State Court of Appeals, but failed to highlight or elaborate upon any specific issue.  See Amended Appendix, State Court Records, Appendix "J" at 126. Respondent further contends that a failure to raise specific claims on appeal is tantamount to a failure to "fairly present" his claims to the highest state court and thus exhaust state remedies.

Whether a claim is fairly presented to state court often depends on the facts of the case.  See e.g., Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) (holding that when petitioner filed to the Court of Appeals his Appellate Division brief that raised three claims and a letter arguing only one of them, petitioner did not fairly present to state court the remaining two claims); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000) (holding claims exhausted when petitioner submits Appellate Division brief to Court of Appeals with letter that requested court to "consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief"); Galdamez v. Keane, 394 F.3d 68, 76 (2d Cir. 2005) (holding petitioner who did not specify particular claims in his application for leave to appeal, but only enclosed a copy of the Appellate Division's decision and the appellate briefs, did fairly present claims to Court of Appeals who "would construe the concise application in this case as a request for review of all of

the issues outlined in the briefs"). I find that contrary to respondent's contention, submitting the appellate briefs of the appellant and respondent as well as Medley's pro se supplemental brief with a letter simply requesting permission for leave to appeal fairly presents the claims petitioner alleged in the Appellate Division to the highest state court. Unlike <u>Grey</u>, Medley's leave application did not "affirmatively direct[] the Court of Appeal's attention away from claims contained in the attached briefs." <u>Id.</u> Furthermore, while Medley's leave application did not expressly request review of "all issues" as in <u>Morgan</u>, such an "explicit statement is unnecessary where the only 'fair import' of the total application suggests a request for review of all the issues argued to the Appellate Division." <u>Id.</u> (citing <u>Grey</u>, 933 F.2d at 120). Therefore, because Medley's claims were fairly presented to the highest state court, the Court of Appeals' denial of the application for leave to appeal exhausts Medley's state remedies.

## III. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established

Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  28 U.S.C. § 2254(d)(1), (2); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000); <u>Miranda v. Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003); <u>Boyette v. LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).

The federal habeas statute provides that courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This means that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998) (citing 28 U.S.C. § 2254(a); <u>see</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Furthermore, the AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Boyette</u>, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotation marks omitted).  The Second

Circuit has provided additional guidance concerning a federal court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## IV. Merits of the Petition

### A. Prosecutorial Misconduct

Medley alleges in his petition for a writ of habeas corpus, as he did on direct appeal to the Appellate Division and in his collateral 440.10 motion, that he was denied a fair trial by the misconduct of the prosecutor. Specifically, Medley claims that the prosecutor knowingly offered or permitted testimony by Officer Powell that was false, inconsistent, or in the alternative, "carelessly false." (Docket No. 20).

A habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. To overturn a conviction, the Court must find that the prosecutor's alleged misconduct constituted more than mere trial error, and instead was so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907

F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); see also Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). Additionally, the petitioner must demonstrate that he suffered actual prejudice from the prosecutor's remarks or actions. See Bentley v. Scully, 41 F.3d 818, 823 (2d Cir. 1994). The Second Circuit has outlined three factors to be weighed in assessing whether a petitioner has shown actual prejudice: (1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) the certainty of the conviction absent the prejudicial conduct (i.e., the strength of the prosecution's case). Id. at 824; United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) ("Often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal.").

Medley claims he was deprived of a fair trial because the prosecutor's elicited allegedly false testimony given by Officer Powell at trial regarding whether someone told him that Medley had a gun. Medley claims that there were inconsistencies between

Officer Powell's trial testimony and his statements set forth in the police report Powell prepared. This Court notes initially that no testimony was offered by Officer Powell that anyone told him Medley had a gun, but only that as Powell approached Medley a female at the scene said, "[b]e careful." T. 207-08. The Appellate Division concluded that the trial court properly admitted the statement, "'[b]e careful'... not for it's truth but to explain why the officer arrested [Medley] and searched him for a gun." Medley, 300 A.D.2d at 1096. A state court's evidentiary rulings on the admission of certain testimony at trial generally do not present constitutional issues cognizable in a habeas corpus petition. See Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("[w]e... acknowledge our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); see also Cummings v. Burge, 581 F.Supp. 2d 436, 451 (W.D.N.Y. 2008). Furthermore, Medley presents no evidence that the prosecutor knowingly presented perjured testimony. There also was no proof in the record that Officer Powell lied. Any inconsistencies in testimony are properly left for jury determination as a question of credibility. See United States v. Sanchez, 969 F.2d 1409, 1415 (2d Cir. 1992). Medley has merely pointed to alleged inconsistencies in some witnesses' testimonies and does not allege prosecutorial misconduct severe enough to violate due process. After reviewing the record, this Court finds

Medley's claim that the prosecutor engaged in misconduct by offering Officer Powell's testimony is without merit and therefore is dismissed.

### B.    Right to Confrontation and Cross-examination

Medley alleges in ground one of his petition for a writ of habeas corpus that he was denied his right to confront and cross-examine the witnesses against him.

Every limitation on a petitioner's right to cross-examine a witness does not present a federal constitutional violation. See, e.g., Henry v. Speckard, 22 F.3d 1209, 1219 (2d Cir. 1994), cert denied, 513 U.S. 1029 (1994). "All erroneous rulings that improperly restrict cross-examination under state or federal rules of evidence do not necessarily implicate the Confrontation Clause. Rather, the Constitution only guarantees an opportunity for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish." Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990), cert. denied, 499 U.S. 943 (1991) (quotations omitted, emphasis in original).

In his petition, Medley does not allege any impediment to defense counsel's ability to conduct cross-examination. Neither the court nor the prosecutor interfered with defense counsel's right or ability to confront or cross-examine witnesses, and the petitioner does not allege any external obstacle. Rather, Medley

contends that he was improperly precluded from cross-examination because the prosecutor knowingly presented perjured testimony. This is the exact contention Medley alleged in his claim of prosecutorial misconduct, previously dismissed above, and is both separate and distinct form any assertion regarding the right to confront and cross-examine witnesses. Medley also claimed his trial counsel failed to properly cross-examine the prosecution's witnesses. This exact contention is repeated in ground five of Medley's petition, alleging ineffective assistance of state trial counsel, as analyzed below. Because this Court finds Medley did have effective assistance of counsel throughout the trial, his claim that counsel was deficient during cross-examine is without merit. Accordingly, I find Medley's claim that he was denied the right to properly cross-examine witnesses is without legal or factual basis. Medley has failed to state a federal constitutional claim upon which habeas relief can be granted, and his claim therefore is denied.

### C. Trial Court's Jury Charge

Medley also alleges in his instant petition that the state trial court gave an improper jury charge regarding the criminal possession of a weapon.

Federal Courts will not review a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment... whether the state law ground is substantive or procedural." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); see Harris v. Reed, 489 U.S. 255, 261 (1989). The bar on habeas review resulting from a procedural default applies even where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits. See, e.g., Id. at 264 n.10; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

The Appellate Division and the state trial court, when reviewing Medley's 440.10 motion, concluded that Medley's claim regarding the jury charge was not preserved for review because Medley failed to comply with New York's contemporaneous objection requirement (CPL § 470.05). See Medley, 300 A.D.2d at 1096-97; Amended Appendix, State Court Records, Appendix "S" at 309. Because the Appellate Division "explicitly invoke[d] a state procedural bar as a separate basis for its decision," the failure to comply with the requirements of CPL § 470.05 means the petitioner failed to properly preserve a claim for appellate review. Harris, 489 U.S. at 264 n.10. In reviewing petitioner's collateral attack, the state trial court reiterated the Appellate Division's conclusion. The state courts therefore relied on an "independent" rule separate from the federal question in deciding petitioner's claim with respect to the jury charge.

The independent state ground relied on by the state courts is also an "adequate" state ground for the purpose of analyzing Medley's instant petition. A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). New York's contemporaneous objection requirement (CPL § 470.05) is firmly established and regularly followed as demonstrated by relevant case law. See, e.g., Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."). Therefore, this court finds the state law ground is both independent of the federal question and adequate to support the decisions of the state courts, and the petitioner has a procedural bar from habeas review on this claim.

A federal habeas petitioner may excuse a procedural default by showing cause for the default and prejudice arising therefrom, or by showing that a failure to consider the claim will result in a miscarriage of justice. See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). A fundamental miscarriage of justice occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Medley fails to meet the stringent requirements to show a miscarriage of justice, as "credible claims of actual innocence are 'extremely rare.'" Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). To establish actual innocence, a "petitioner must demonstrate that, 'in light of all the evidence... it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 321-22 (1995)). Medley has not provided evidence sufficient to establish actual innocence and overcome the People's evidence at trial to the degree that no reasonable juror could have convicted him.

Medley likewise has not demonstrated "cause" that would excuse his failure to contemporaneously object to the alleged erroneous jury charge. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Medley claims ineffective assistance of state trial counsel, which if true would constitute sufficient cause under the standard, but this Court finds Medley did in fact have effective assistance of counsel and can make no showing that his counsel was "so ineffective as to violate the Federal Constitution." Id. He therefore can not show cause sufficient to excuse the procedural default nor the actual innocence standard required to prove a

fundamental miscarriage of justice. Accordingly, Medley's claim that the trial court erred in its charge to the jury is procedurally barred from federal habeas review and dismissed.

### D. Proof Beyond a Reasonable Doubt

Medley further alleges that the evidence admitted at trial was insufficient to prove his guilt of Criminal Possession of a Weapon in the Third Degree beyond a reasonable doubt. Medley raised this issue in his 440.10 collateral motion, but the state trial court dismissed the claim, concluding this issue requires review of the trial record and should have been raised on direct appeal.

When reviewing a claim that there was insufficient evidence to support a conviction, this Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998); Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994). In considering the sufficiency of the evidence with respect to a state law conviction, this Court "must look to state law to determine the elements of the crime," Fama, 235 F.3d at 811 (citation omitted); accord Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), and consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law."

Einaugler v. Supreme Court of State of New York, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted).  A habeas petitioner "challenging the sufficiency of the evidence bears a very heavy burden."  Id. at 840.  The evidence must be viewed in the light most favorable to the prosecution, and all permissible inferences must be construed in the state's favor.  See United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993).  Lastly, a court on federal habeas review may not "disturb the jury's findings with respect to the witnesses' credibility." United State v. Roman, 870 F.2d 65, 71 (2d Cor. 1989). See, e.g., Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (a federal court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts  in favor of the prosecution, and must defer to that resolution.").

A person is guilty of Criminal Possession of a Weapon in the Third Degree when he possesses any firearm and has been previously convicted of any crime.  N.Y. Penal Law § 265.02(1).  Officer Mace testified that Medley admitted the gun was his and that he put the gun down by the Frontier Field when he realized the police were coming.  T. 244-45.  Medley contends that he did not admit ownership of the gun, and his alleged admission to Officer Mace that he owned the gun was insufficient to show he possessed the weapon.  The record shows, however, that proof of possession came

from several sources.  The 911 call to police said a man and woman were fighting and shots had been fired.  T. 205.  As Officer Powell approached Medley and Liptrot, he was told to "be careful." T. 206-07.  A handgun was found within two to three feet from where Medley was standing.  T. 208-09.  Additionally, Medley had previously been convicted of a drug-related felony.  See Arraignment Record of Feb. 21, 2001, at 3.

Viewing the evidence in the light most favorable to the prosecution, a rational jury could reasonably have concluded that Medley possessed the gun found by Officer Powell next to him and was guilty of this crime beyond a reasonable doubt.  This claim is accordingly dismissed.

### E.    Ineffective Assistance of Trial Counsel

Medley contends in his petition for habeas relief that he was denied meaningful representation by defense counsel at trial based upon the alleged failures or omissions of defense counsel to object at pertinent points during trial, including instances set forth in all previous claims in his petition, such as failing to object to the trial court's jury charge, failing to "vigorously" cross-examine witnesses, and failing to expose witnesses' alleged perjury.  This contention was also alleged in petitioner's direct appeal and in his collateral 440.10 motion.  The Appellate Division's decision that Medley "was not denied effective assistance of counsel," Medley, 300 A.D.2d at 1096, represents an

adjudication on the merits and is afforded a deferential standard of review under AEDPA. See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (finding an Appellate Division's one-word decision that petitioner's coram nobis petition was "denied" constituted an "adjudication on the merits" because there was "no basis for believing that the Appellate Division rejected the claim on non-substantive grounds.").

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that: (1) his attorney's performance was deficient, and (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The standard is phrased in the conjunctive, so a habeas petitioner's failure to satisfy either prong requires that his ineffective assistance claim be rejected. Id. at 697. The burden on the petitioner is a heavy one because a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound [legal] strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690; accord, e.g., Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001).

The failure of Medley's counsel to object to the trial court's jury charge did not constitute ineffective assistance of counsel. To prevail under a claim of an erroneous jury charge, the habeas "petitioner must show not only that the instruction misstated the law, but also that the error violated a right guaranteed to him by federal law." Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990). The petitioner must therefore show not that the jury charge was "'merely... undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.' The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (citing Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)).

After examining the record, this Court finds that the trial court's jury charge was adequate. The trial court charged the jury

on the theory of possession as follows: "Possess means to have physical possession or otherwise exercise dominion or control over tangible property." T. 386. Medley claims that the court "did not advise the jury that guilt must be found upon a particular theory of possession with the result that the jury was left to make its own determination as to the theory of possession had (sic) been committed by defendant." (Docket No. 20). This Court does not agree, and finds this charge adequately apprised the jury of when possession could be found.

Therefore, because there is no evidence of error in the trial court's jury charge, Medley's trial counsel did not unreasonably fail to object to the charge as given and was not deficient in his performance.

Medley also claims his trial counsel was deficient for failing to "vigorously" cross-examine witnesses. However, as stated above, the "Constitution only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish." Harper, 916 F.2d at 57. Medley does not allege any evidence, besides his conviction in hindsight, to overcome the presumption that the challenged action was not sound legal strategy. Accordingly, his claim that his defense counsel was deficient in his cross-examination of the prosecution's witnesses is meritless.

Medley's remaining claims relating to ineffective assistance of counsel - namely, failing to expose witnesses' perjury and failing to object to prosecutorial misconduct and a conviction based on insufficient evidence - are without merit for the reasons already stated above. Therefore, Medley's state trial counsel was not deficient as measured by an objective standard of reasonableness and in fact provided Medley with effective assistance of counsel. This claim is dismissed.

## **CONCLUSION**

For the reasons stated above, Kevin Medley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the petition is dismissed. Further, because Medley has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           July 30, 2009